## Commonwealth v. Petritus et al.

*Criminal law—Rape—Evidence—Competency of prosecutrix—Rés gestæ.*

1. In a prosecution for rape, the fact that the prosecutrix made complaint to another is properly admitted under the doctrine of *res gestae* as corroborative of her testimony.

*New trial—Affidavit—Perjury of witness—After-discovered evidence.*

2. An affidavit obtained eight days after conviction, alleging newly-discovered evidence and contradicting the oath and testimony of affiant as given at trial, reveals perjury either in the trial testimony or in the affidavit and is not ground for a new trial.

3. After-discovered evidence which merely tends to contradict a witness for the Commonwealth in unimportant details, such as the seat a witness occupied, whether front or back, in an automobile, is not ground for a new trial.

Indictment for rape. Motion for new trial. O. and T. Luzerne Co., Sept. Sess., 1926, No. 87.

*T. M. Lewis,* District Attorney, for Commonwealth.

*C. E. Keck* and *S. S. Herring,* for defendants.

COUGHLIN, J.—The defendants, George Petritus, Zig. Churnetski and Joseph Pigarella and one Joseph Bush, who is a fugitive from justice, were indicted as follows: "First count, rape; second count, attempt to rape; third count, assault and battery." Sept. 16, 1926, three of the defendants, George Petritus, Zig. Churnetski and Joseph Pigarella, who were tried jointly, were found guilty as indicted.

The case of the Commonwealth developed that, upon June 30, 1926, Mary Rushkowski, of Ashley, Pa., a suburb of Wilkes-Barre, Pa., a married woman with a large family, the oldest of whom is nineteen years, between the hours of 9 and 10 P. M., stood at the corner near Hazle and Blackman Streets, Wilkes-Barre, Pa., hailed a passing automobile containing four men and asked them to drive her to Wilkes-Barre, from whence she was going to Plains or Miners Mills to meet her husband. She was admitted to the automobile, which turned off of Hazle Street, however, going into Hanover Township, Luzerne County, Pa.

She was subsequently pulled from the automobile into the woods and the four occupants of the automobile there and then assaulted her and raped her. The time of the rape was approximately 1.30 A. M., July 1st.

She was then put back in the automobile, taken out a second time, ran away, and made her way to a farmhouse some distance away.

She went to the door of the house, aroused the people therein, but returned to the road on seeing a passing automobile. She begged a ride and was taken to a garage in Ashley, where the police were summoned, as well as a doctor. Her slippers were gone, sixty dollars which she had on her person was missing, her corset, silk shawl, pocket-book, containing a pin, 50 cents and a handkerchief, were likewise missing. She was thence taken to the hospital about daybreak. Her physical and mental condition at the time were pitiable.

All four of the defendants indicted were arrested at 1.30 the same night or morning in Hanover Township, not far from the place of assault. They were traveling toward Ashley and away from the place of the assault when arrested by the Ashley police because of excessive speed. They were taken at once to police headquarters, a record made of the number of their car, their names and addresses, and then dismissed.

Subsequently learning of the assault of Mary Rushkowski, three of the defendants were re-arrested, one being a fugitive from justice.

Commonwealth v. Petritus et al.

The Commonwealth maintains that upon the clothing of one of the defendants there were blood-stains, and called a chemist, who testified that the blood-stains were similar to those upon the clothes of Mary Rushkowski, and were human blood. The defendant accounts for the blood-stains by alleging injury to his finger.

A pin identified by Mary Rushkowski as hers was shown to have been taken from the pocket of one of the defendants. As to which one, the evidence is conflicting. One of the police officers testified that it was taken from the coat of one of the defendants, while the defendants introduced testimony that he was arrested without having on any coat.

The Commonwealth produced two witnesses, one, Nicholas Fetchik, and one, Anthony Galardi, present at the time Mary Rushkowski got into the car on Hazle Street. Anthony Galardi gave the number of the car as 982,168, being the number taken by the police at 1.30 the night of the assault as the number of defendants' car. Galardi testified that Fetchik took down the number, and he memorized it. Fetchik claimed Galardi took down the number and he, Fetchik, gave it to a Mr. Casey, who was not called. Both witnesses testified four men were in the car at the time. Two witnesses, Fetchik and Galardi, could not identify the defendants. The testimony of Mary Rushkowski was unsatisfactory on the subject of identification. She identified them, but in parts of her testimony stated her inability to do so.

The defence was an alibi accounting for the four defendants up to about 11.20 on the night of June 30th, at which time they allege they were in Sugar Notch, and traveled from thence in their automobile to a pool-room in Carey's Patch, in Hanover Township, not a great distance from where the assault took place.

The evidence of the defendants as to their movements before 11.20 was as follows: George Petritus, driving the machine, left home about 9.15, June 30th, driving alone from Askam to Warrior Run, a community adjoining Hanover Township, there meeting another one of the defendants, Joseph Pigarella.

They thereupon left Warrior Run, traveling through Sugar Notch up the Ashley plane to Drums, Luzerne County, Pa.; turned back because of tire trouble, arriving at Sugar Notch again at approximately 11.20 or 11.30. There they met the other two defendants, Churnetski and Bush, and proceeded to the said pool-room at Carey's Patch. They left about 1 o'clock A. M., and were arrested for speeding, as alleged by the police.

Many witnesses testified in behalf of the defendants, showing Churnetski to have been at Sugar Notch as late as 11.20.

Many witnesses were examined as to the good character of the defendants, more particularly Churnetski. The proprietor at Carey's Patch corroborated defendants' testimony as to their presence in his pool-room.

The defendants having been promptly convicted, moved for a new trial, assigning as error (1-3) the admission and subsequent refusal to strike out the testimony of Noah Parker, the farmer at whose farmhouse Mary Rushkowski first stopped in a deplorable condition seeking aid. The testimony objected to was the complaint that Mary Rushkowski made to the witness as to what had happened to her. Similar objection was made to what Mary Rushkowski said when arriving at the garage, stating to the doctor and police summoned as to what had happened to her.

We believe the evidence complained of was properly admissible under the doctrine of res gestæ and as corroborative testimony. In prosecutions for rape, the fact of complaint of ravishment, freshly made by the alleged vic-

tim, herself called and examined as a witness against the accused, is always admissible, and the absence or delay thereof ordinarily goes to discredit her testimony in support of the charge. See Stevick v. Com., 78 Pa. 460; Com. v. Bardino, 20 Dist. R. 473, and the numerous authorities cited therein.

Further reasons (4-14) for a new trial consist of alleged errors in the court's charge to the jury. These errors, in the main, consist of exceptions to the charge on the subject of an alibi as a defence, and on the subject of reasonable doubt, and also that the court erred in accentuating the main features of the Commonwealth's case.

We have reviewed the charge of the court carefully and are of the opinion that it was proper and fair to the defendants, taken in its entirety. Furthermore, the defendants' points on the subjects of reasonable doubt and alibi were affirmed, they being in harmony with the court's charge. The defendants' counsel were permitted to draw the court's attention to facts concerning which they wished further review by the court, and those facts were thereupon reviewed. Counsel were asked if there was anything further to which they desired the attention of the jury drawn, to which they made no response. We are unable to see that there was any over-emphasizing of the Commonwealth's case.

Subsequent to the filing of the formal reasons for a new trial, affidavits in support of reasons for a new trial on the ground of after-discovered evidence were presented to the court. The first was presented on Sept. 25, 1926, consisting of the affidavit of Anthony Galardi, in which he, under oath, now sets forth that he did not remember the license number of the automobile, but was told it by the officer acting as prosecutor in this case just prior to coming into court.

In reference to this affidavit, we call attention to the fact that it was obtained eight days after the conviction, and stamps the person making it as a perjurer as a witness during the course of the trial or in his deposition.

Attention is further called to the fact that during the trial of the case, the Commonwealth rested without calling Nicholas Fetchik. Defendants' counsel thereupon, with great heat, demanded that Nicholas Fetchik be called as the Commonwealth's witness. To this, the Commonwealth assented, placed him on the stand, and he testified that he saw Mary Rushkowski on June 30th; saw her get in an open car; that there were four in the car; that he did not now remember the number of the car, but that he had given the number to a Mr. Casey, and that Mr. Casey lived on Nicholson Street, in the vicinity of Hanover and Blackman Streets; that he had talked only to Anthony Galardi about this case, who lived at No. 45 Prospect Street and was working in the Ashley shops; that he, Galardi, had written down the number. This occurred immediately before noon adjournment.

Court adjourned, and the Commonwealth directed a subpoena to bring in Galardi at once. When court reconvened, Galardi was placed upon the stand and testified that he was living on Prospect Street; was acquainted with Fetchik; that he saw Mary Rushkowski on Hazle Street near Blackman; that he at the time was with Fetchik; that a touring car came along with four or five persons in it whom he did not recognize nor could he identify them now; that he saw the license tag; that Fetchik wrote it down, and that he memorized the number as being 982,168; that since that time he had talked to no one except Fetchik, to whom he talked the day before. He was submitted to severe cross-examination, which did not change his testimony. Under oath, he testified that no one connected with the prosecution, nor any one else, had suggested to him the number; that he told the officers the number before they mentioned it.

The witness now desires to change his testimony, alleging that when the county officers subpœnaed him and brought him to the court-house, following which, within an hour, he was upon the witness-stand, he had been told to testify as he did.

We have carefully reviewed his deposition and are convinced, under the facts and circumstances surrounding the giving of that testimony and the depositions, that his testimony as given on the trial should not be permitted to be now repudiated.

Sept. 27, 1926, additional affidavits were presented and the deposition of one of the affidavits, Anna Sabukske, taken.

We have gone over the depositions of the witness, Anna Sabukske, and the other affidavits, giving them our most careful consideration, notwithstanding the delay in filing the affidavits and the taking of the depositions.

The effect of the evidence would be to in part corroborate the Commonwealth's witnesses only and contradict Mary Sabukske as to whether she sat in the front or rear seat of the automobile.

We do not believe that the evidence goes to the merits of the case, but merely endeavors to impeach the credibility of Mary Sabukske as to the one fact, whether she got in the front seat or the back seat of the automobile.

The court is not of the opinion that the after-discovered evidence should, or probably would, produce any different verdict than that already found by the jury.

In accordance with the aforesaid, all the reasons in support of the motion are dismissed, and the motion for a new trial denied.

From Frank P. Slattery, Wilkes-Barre, Pa.